UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------x **MEMORANDUM AND ORDER**

HALIL KAJOSHAJ, et al.,  Case No. 11-CV-4780 (FB) (JMA)

              Plaintiffs,

   -against-

THE CITY OF NEW YORK, et al.,

              Defendants.

------------------------------------------------------------x

*Appearances:*

| | |
|---|---|
| *For the Plaintiffs:* | *For the Defendants*: |
| STEVEN G. STORCH, ESQ. | MICHAEL A. CARDOZO |
| THOMAS M. MONAHAN, ESQ. | Corporation Counsel of the City of New York |
| STORCH AMINI & MUNVES PC | |
| Two Grand Central Tower | GLORIA M. YI, ESQ. |
| 140 East 45th Street, 25th Floor | 100 Church Street, Room 2-185 |
| New York, NY 10017 | New York, NY 10007 |

**BLOCK, Senior District Judge:**

        Plaintiffs Halil Kajoshaj ("Halil"), suing on behalf of himself and as Parent and Guardian for his son Abedin Kajoshaj ("A.K.") (collectively "plaintiffs"), have filed suit against defendants the New York City Department of Education ("DOE"), Community Superintendent Karina Costantino, and Principal Gary Williams (collectively "defendants") for their decision to hold back A.K. in the fifth grade for the 2010-2011 school year.[1] A.K., an Albanian-American and practicing Muslim, was formerly a student at Public School 180 ("the Academy"), and attended the Academy from 2003-2010 for pre-kindergarten through fifth grade. Plaintiffs contend that in keeping A.K. in the fifth grade, the defendants discriminated against them on the basis of their national origin and religion. The Amended Complaint

---

[1] While the Amended Complaint also names the City of New York as a defendant, plaintiffs have since withdrawn their claims against the City. Pls.' Opp'n Br. at 1 n.2.

contains the following claims: violation of Title VI of the Civil Rights Act of 1964 (against DOE), 14th Amendment Equal Protection and Due Process violations pursuant to 42 U.S.C. § 1983 (against Principal Williams and Superintendent Costantino), *Monell* liability (against DOE), violation of New York Education Law § 3202 (against DOE), and violation of the New York State Constitution Article I, §§ 3 and 11 (against all defendants). Defendants move to dismiss pursuant to Federal Rule 12(b)(6). For the below reasons, the Court grants the motion in its entirety.

**I.      Factual Background**

While plaintiffs' suit is premised upon defendants' decision to hold back A.K., the Amended Complaint lists a variety of preceding events which plaintiffs contend demonstrate defendants' prejudice against their religion and national origin. Briefly summarized, these events include the following: complaints of child abuse filed against Halil with the New York State Office of Children and Family Services allegedly made by a counselor employed at the Academy, statements by this same counselor to one of A.K.'s sisters that he was "going to find a better home for her," defendants' decision to hold back A.K.'s two sisters following the 2004-2005 school year, defendants' requirement that A.K. obtain doctors' notes to confirm he could not receive the measles, mumps and rubella vaccination due to an allergic reaction to eggs, and A.K.'s suspension for two to three weeks following his failure to obtain this vaccine. Am. Compl. ¶¶ 23-40.

Contending these events are relevant to their claims, plaintiffs' lawsuit is fundamentally grounded in their assertion that defendants' decision to hold back A.K. was

2

the result of religious and racial discrimination. They allege that A.K. received a June 16, 2010 Grade 5 Report Card indicating that he had achieved passing scores on his English Language Arts and Math exams, as well as satisfactory grades, and that he would thus be advanced to the sixth grade for the 2010-2011 school year. However, the Academy subsequently required A.K. to attend summer school, and then informed plaintiffs that A.K. needed to repeat the fifth grade. According to plaintiffs, Superintendent Costantino denied their appeal of this decision, and throughout the process Principal Williams refused to meet with Halil or provide additional information concerning the decision. Halil then enrolled A.K. into a private school, where he was placed in the sixth grade and advanced to the seventh grade the next year.

## II. Analysis

### A. Title VI Claim

Plaintiffs first allege that DOE violated Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d et seq., in discriminating against them on the basis of their national origin. A Title VI claim requires that the plaintiff show "that the defendant discriminated against him on the basis of race . . . that [such] discrimination was intentional . . . and that the discrimination was a substantial or motivating factor for the defendant's actions." *Tolbert v. Queens College*, 242 F.3d 58, 69 (2d Cir. 2001) (internal quotations omitted).

Accepting plaintiffs' allegations, the Court finds that they have not alleged facts sufficient to state a valid Title VI claim. Specifically, plaintiffs have not set forth any facts supporting the conclusion that defendants' decision was the result of discrimination against their national origin. *See Lopez v. Bay Shore Union Free Sch. Dist.*, 668 F. Supp. 2d 406, 414

(E.D.N.Y. 2009) (On a motion to dismiss, plaintiff "must plead specific facts that give rise to an inference of intentional discrimination.") (citing *Rivera-Powell v. New York City Bd. of Elections*, 470 F. 3d 458, 470 (2d Cir. 2006)). Instead, plaintiffs merely identify themselves as Albanian-Americans and then conclude that A.K. "was not promoted to the sixth grade because of the Defendants' prejudice . . . against Plaintiffs' . . . Albanian national origin." Am. Compl. ¶ 46.

Similarly, while the Amended Complaint lists a variety of negative events preceding the Academy's decision, plaintiffs have not identified any basis for believing that these events were the result of discrimination. Rather, plaintiffs infer that simply because these events happened, defendants must have been discriminating against them. However "a complaint consisting of nothing more than naked assertions, and setting forth no facts upon which a court could find a violation of the Civil Rights Act, fails to state a claim under Rule 12(b)(6)."[2] *Martin v. New York State Dep't of Mental Hygiene*, 588 F.2d 371, 372 (2d Cir. 1978); *see also Yusuf v. Vassar College*, 35 F.3d 709, 713-14 (2d Cir. 1994) (dismissing plaintiff's claim as conclusory where he "offered no reason to suspect that his being found guilty of sexual harassment had anything to do with his race, other than his assertion that the panel members were white and that he is Bengali."); *Lopez*, 668 F. Supp. 2d at 414-15 (facts indicating

---

[2]Plaintiffs also seek to infer discriminatory intent from defendants' alleged destruction of A.K.'s June and August 2010 exams. This argument fails because the placement decision occurred prior to the alleged spoliation of evidence. Additionally, exam scores alone are not determinative of a child's grade placement. *See* N.Y.C. DEP'T OF EDUC. REG. OF CHANCELLOR No. A-501 §§ VI(A), VI(E)(1) (2012) ("[W]here a principal determines, based upon student work, teacher observation, and grades in academic courses, that a student is not ready for the next grade, such student shall not be promoted.").

4

discrimination typically include "comments made by individuals suggesting that they harbor racial biases.").

Plaintiffs also allege that "[u]pon information and belief, non-Muslim students from families of non-Albanian origin at the [] Academy received test scores and grades similar to [A.K.] in the fifth grade class for the 2009-2010 school year and were promoted to the sixth grade by the [] Academy," Am. Compl. ¶ 45. However, without specific factual allegations concerning these allegedly similarly situated individuals, such a bare conclusion cannot survive a motion to dismiss. *See D.F. ex rel. Finkle v. Bd. of Educ. of Syosset Centr. Sch. Dist.*, 386 F. Supp. 2d 119, 128 (E.D.N.Y. 2005) (dismissing claim where plaintiff alleged that "upon information and belief, other students attending middle school within the School District who engaged in similar or more severe conduct . . . received suspensions of a lesser duration," but failed "to identify any similarly situated individual or any set of facts in support of his allegations of disparate treatment.").

"Strong policy considerations militate against the intervention of courts in controversies relating to an educational institution's judgment of a student's academic performance." *Susan M. v. New York Law Sch.*, 76 N.Y.2d 241, 245 (1990). "[I]nstitutional assessments of a student's academic performance, whether in the form of particular grades received or actions taken because a student has been judged to be scholastically deficient, necessarily involve academic determinations requiring the special expertise of educators. . . Thus . . . courts have long been reluctant to intervene in controversies involving purely academic determinations." *Id.* at 245-46. Accordingly, the Court grants defendants' motion to dismiss the Title VI claim.

5

**B.    42 U.S.C. § 1983 Claims**

Plaintiffs next assert claims against Principal Williams and Superintendent Costantino under 42 U.S.C. § 1983, alleging a deprivation of those rights, privileges, and immunities secured by the Fourteenth Amendment's Equal Protection and Due Process clauses.

**i.    Equal Protection Clause**

"[A]n equal protection claim has two essential elements: (1) the plaintiff was treated differently than others similarly situated, and (2) this differential treatment was motivated by an intent to discriminate on the basis of impermissible considerations, such as race or religion." *Dorcely v. Wyandanch Union Free Sch. Dist.*, 665 F. Supp. 2d 178, 194 (E.D.N.Y. 2009) (citation omitted). On the first prong, plaintiffs allege that "[u]pon information and belief, non-Muslim students from families of non-Albanian origin at the [] Academy received test scores and grades similar to [A.K.] in the fifth grade class for the 2009-2010 school year and were promoted to the sixth grade by the [] Academy," and "other children with similar grades and test scores were not required to attend summer school." Am. Compl. ¶¶ 43, 45. As stated previously, without more, these conclusory allegations are insufficient to satisfy the standards on a motion to dismiss. *See McDowell v. North Shore Long Island Jewish Health Sys.*, 788 F. Supp. 2d 78, 82 (E.D.N.Y. 2011) ("[P]laintiff's conclusion that other similarly situated employees were treated more favorably than him is a bare conclusion, unsupported by any specific alleged facts."); *D.F. ex rel. Finkle*, 386 F. Supp. 2d at 128 (dismissing claim where plaintiff alleged that "upon information and belief, other students attending middle school within the School District who engaged in similar or more severe conduct . . . received

6

suspensions of a lesser duration.").

Further, on this claim plaintiffs again fail to plead any facts indicating that the Academy's decision was motivated by an intent to discriminate against their religion or national origin. *See Rivera-Powell*, 470 F.3d at 470 (affirming dismissal of equal protection claim where plaintiff had argued she was subjected to disparate treatment motivated by bias but "proferr[ed] only a conclusory allegation of discrimination, which [] without . . . allegations of particularized incidents, d[id] not state a valid claim."); *Abascal v. Jarkos*, 357 F. App'x 388, 391 (2d Cir. 2009) (affirming dismissal where plaintiff failed to allege "any facts that could support a finding of disparate treatment, much less intentional discrimination, based on his status as a Mariel Cuban.").

**ii.     Due Process Clause**

On their due process claim, Plaintiffs allege that A.K. held a viable property interest in obtaining a free public education, and that he was deprived of this right when defendants decided to hold him back in the fifth grade. Pls.' Opp'n Br. at 22. They then assert a deprivation of due process when defendants failed to meet with Halil to discuss the decision, and denied his appeal the same day it was submitted. *See Local 342, Long Island Pub. Serv. Employees v. Town Bd. of the Town of Huntington*, 31 F.3d 1191, 1194 (2d Cir. 1994) (requiring that a plaintiff alleging violation of due process "first identify a property right, second show that the state has deprived him of that right, and third show that the deprivation was effected without due process.").

"While the U.S. Constitution does not provide a property right to education, the Second Circuit has found that New York State law creates a right to a free public education

7

for individuals under the age of twenty-one." *Lopez*, 668 F. Supp. 2d at 419; *see also* N.Y. EDUC. LAW § 3202 (2012). In *Goss v. Lopez*, the Supreme Court held that a state "must recognize a student's legitimate entitlement to a public education as a property interest which is protected by the Due Process Clause and which may not be taken away for misconduct without adherence to the minimum procedures required by that Clause." *Goss v. Lopez*, 419 U.S. 565, 574 (1975). Accordingly, under New York law A.K. "undeniably had a legitimate claim of entitlement to a public education." *Mazevski v. Horseheads Cent. Sch. Dist.*, 950 F. Supp. 69, 72 (W.D.N.Y. 1997); *see also Lopez*, 668 F. Supp. 2d at 419.

However, plaintiffs cannot establish a deprivation of this protected property interest in defendants' decision to hold back A.K. Under *Goss*, "the property interest which is protected by the Due Process Clause is the right to participate in the entire educational process . . . . [I]t is only when a student is excluded from the entire educational process that due process must be afforded." *Mazevski,* 950 F. Supp. at 72; *see also Goss*, 419 U.S. at 576 ("the total exclusion from the educational process . . . is a serious event in the life of the [] child."); *Saggio v. Sprady*, 475 F. Supp. 2d 203, 209-10 (E.D.N.Y. 2007) (finding plaintiff failed to demonstrate deprivation of a protected property interest where "the District did not exclude her from attending school . . . thus [it] cannot be said that the District infringed upon her right to an education."). Plaintiffs do not contend that defendants excluded A.K. from attending the Academy—instead they allege only that he was required to repeat the fifth grade. This does not amount to an exclusion from the educational process as a whole. Further, plaintiffs have not provided any basis to conclude that A.K. held a protected property interest in the right to advance to a higher grade. *See, e.g., Toth ex rel. Toth v. Bd. of Educ. Queens Dist. 25*, 2008

8

WL 4527833, at *5 (E.D.N.Y. Sept. 30, 2008) (addressing plaintiffs' claim that the student was entitled to enroll in a Mandarin-English dual language program, finding "[plaintiffs'] 'unilateral expectation' or 'abstract need or desire' is simply insufficient to create a property interest in the Program.") (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972)); *Saggio*, 475 F. Supp. 2d at 209-10 ("[T]he presumption that the state must give [plaintiff] an education tailored to her liking is wrong."); *Mazevski,* 950 F. Supp. at 72 (finding no constitutional violation where plaintiff claimed deprivation of a property interest due to his exclusion from participation in the marching band); *Immaculate Heart Cent. Sch. v. New York State Pub. High Sch. Athletic Assoc.*, 797 F. Supp. 2d 204, 216-17 (N.D.N.Y. 2011) (granting motion to dismiss because participation in interscholastic athletics is not protected by due process); *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005) (holding it could reach the inquiry of what process was due only upon first finding that a protected interest was at stake).[3]

**C.** *Monell* **Liability**

Plaintiffs next allege *Monell* liability against DOE for Superintendent Costantino and Principal Williams' alleged violations of plaintiffs' constitutional rights. "*Monell* does not provide a separate cause of action for the failure by the government to train its employees; it extends liability to a municipal organization where that organization's failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation."

---

[3]Neither can plaintiffs establish that they were denied due process by virtue of defendants' failure to meet with Halil to discuss the decision or because their appeal was denied the day it was submitted. The Amended Complaint is devoid of any facts supporting the conclusion that defendants failed to provide plaintiffs with the appeal process afforded by Regulation A-501. More importantly, plaintiffs concede they were granted an in-person meeting to discuss the Academy's decision. Am. Compl. ¶ 52.

9

*Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006). As this Court has found plaintiffs have not sufficiently pled a violation of their equal protection or due process clause rights, they are unable to establish *Monell* liability against DOE.[4] *See id*. ("Because the district court properly found no underlying constitutional violation, its decision not to address the municipal defendants' liability under *Monell* was entirely correct.").

**D.     State Law Claims**

Finally, plaintiffs allege state law claims against all of the defendants for violations of New York Education Law § 3202 and the New York State Constitution, Article I, §§ 3 and 11. Even though the federal claims have been dismissed, the Court will retain jurisdiction over these claims. *See Mauro v. S. New Eng. Telecomms.*, 208 F.3d 384, 388 (2d Cir. 2000) (upholding district court's decision to retain jurisdiction over state claims following dismissal of federal claim where declining jurisdiction over state claims "would have furthered neither fairness nor judicial efficiency" and the state claims did not require the district court "to resolve any novel or unsettled issues of state law").

On plaintiffs' claim for violation of New York Education Law § 3202, this claim must be dismissed because plaintiffs have not alleged any facts indicating that A.K. was denied the right to a free and public education. *See* N.Y. EDUC. LAW § 3202 (2012). Regarding

---

[4]Plaintiffs also fail to allege any facts in support of their conclusion that DOE "created and maintained respective customs, policies, and/or practices of failing to adequately train, supervise, and discipline its employees and agents . . . regarding each student's right to a complete and thorough appeal of a promotion decision." Am. Compl. ¶ 80. This is an independent basis for dismissing the *Monell* claim. *See Zahra v. Town of Southold*, 48 F.3d 674, 685 (2d Cir. 1995) ("[T]he mere assertion . . . that a municipality has such a custom or policy is insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference.").

plaintiffs' claim for violations of the New York State Constitution, Article I, §§ 3 and 11, this claim must be dismissed because plaintiffs have not alleged any facts supporting the conclusion that they were discriminated against because of their religion or national origin, or that they were prevented from the free exercise of their religion. *See* N.Y. CONST. art. I, §§ 3, 11.

For the above reasons, the Court grants in its entirety defendants' motion to dismiss the Amended Complaint with prejudice.

**SO ORDERED.**

FREDERIC BLOCK  
Senior United States District Judge

Brooklyn, New York  
January 23, 2013